**Nos. 2013-1219, -1220, -1221**

# In the
# United States Court of Appeals
## for the Federal Circuit

SCIENTIFIC PLASTIC PRODUCTS, INC.,

*Appellant,*

v.

BIOTAGE AB,

*Appellee.*

---

Appeals from the United States Patent and Trademark Office, Patent
Trial and Appeal Board in Reexamination Nos. 95/000,495, 95/000,496
and 95/000,497.

## PETITION FOR REHEARING & REHEARING *EN BANC* OF APPELLANT SCIENTIFIC PLASTIC PRODUCTS, INC.

FREDERICK C. LANEY
PAUL K. VICKREY
NIRO, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, IL 60602
(312) 236-0733
laney@nshn.com
vickrey@nshn.com

DAVID M. QUINLAN
DAVID M. QUINLAN, P.C.
32 Nassau Street, Suite 300
Princeton, NJ 08542
(609) 921-8660
david@quinlanpc.com

*Attorneys for Appellant*

# CERTIFICATE OF INTEREST

Undersigned Counsel certifies the following:

1.      The full name of every party or amicus represented by me is:

Scientific Plastic Products, Inc.

2.      The name of the real part in interest (if the party named in the caption is not the real party in interest) represented by me is:

Scientific Plastic Products, Inc.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

Frederick C. Laney                    David M. Quinlan
Paul K. Vickrey                         DAVID M. QUINLAN, P.C.
NIRO, HALLER & NIRO             32 Nassau Street, Suite 300
181 West Madison Street, Suite 4600    Princeton, NJ 08542
Chicago, IL 60602                       (609) 921-8660
(312) 236-0733

Dated: October 10, 2014            */s/ Frederick C. Laney*
                                   *Attorney for Appellant,*
                                   *Scientific Plastic Products, Inc.*

i

# TABLE OF CONTENTS

**Page No.**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES ................................................................... iii

RULE 35(B) STATEMENT OF COUNSEL .............................................1

I.    THE PANEL MISAPPREHENDED THE BOARD'S RULING AND OVERLOOKED KEY EVIDENCE...............................................3

II.   ARGUMENT FOR REHEARING/REHEARING *EN BANC* .......................4

    A.    The Panel's Substitution Of Its Own Reasoning On Appeal For Combining References Was An Error Of Law .....................................4

    B.    A "Potential" Problem Is Not A "Known" Problem............................8

    C.    The Panel Opinion Overlooked That Biotage's Expert Admission Of Not Being Aware Of Leakage Problems Was Not Limited To Yamada ...................................................................................................13

III.  CONCLUSION...........................................................................15

PROOF OF SERVICE.........................................................................17

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alza Corp. v. Mylan Labs., Inc.*,
    464 F.3d 1286 (Fed. Cir. 2006) .......................................................................12

*In re Biedermann*,
    733 F.3d 329 (Fed. Cir. 2013) ...........................................................................6

*Cheese Sys., Inc. v. Tetra Pak Cheese & Power Sys., Inc.*,
    725 F.3d 1341 (Fed. Cir. 2013) ..........................................................................5

*Eisai Co. v. Dr. Reddy's Labs.*,
    533 F.3d 1353 (Fed. Cir. 2008) ..........................................................................9

*Graham v. John Deere Co.*,
    383 U.S. 1 (1966) ........................................................................................1, 14

*In re Klein*,
    647 F.3d 1343 (Fed. Cir. 2011) .......................................................................1, 6

*In re Kotzab*,
    217 F.3d 1365 (Fed. Cir. 2000) ........................................................................15

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2006)..............................................................................*passim*

*Leo Pharm. Prods. v. Rea*,
    726 F.3d 1346 (Fed. Cir. 2013) ............................................................*passim*

*Mintz v. Dietz & Watson, Inc.*,
    679 F.3d 1372 (Fed. Cir. 2012) ................................................................1, 3, 10

*Panduit Corp. v. Dennison Mfg. Co.*,
    810 F.2d 1561 (Fed. Cir. 1987) .............................................................1, 11, 14

*Reiner v. I. Leon Co.*,
    285 F.2d 501 (2nd Cir. 1960) ...........................................................................14

*Rolls-Royce, PLC v. United Techs. Corp.*,
    603 F.3d 1325 (Fed. Cir. 2010) ....................................................................9, 10

*Sec. & Exch. Comm'n v. Chenery Corp.*,
    332 U.S. 194 (1947)......................................................................................1, 3, 6

*In re Sponnoble*,
    405 F.2d 578 (C.C.P.A. 1969) ....................................................................3

*Standard Oil Co. v. Am. Cyanamid Co.*,
    774 F.2d 448 (Fed. Cir. 1985) ..................................................................11

# RULE 35(B) STATEMENT OF COUNSEL

Based on my professional judgment, I believe that the panel decision is contrary to the following decisions of the Supreme Court of the United States: *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398 (2006); *Graham v. John Deere Co.*, 383 U.S. 1 (1966) and *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947).

Based on my professional judgment, I believe that the panel decision is contrary to the following precedents of this Court: *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561 (Fed. Cir. 1987); *Leo Pharm. Prods. v. Rea*, 726 F.3d 1346 (Fed. Cir. 2013); *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372 (Fed. Cir. 2012) and *In re Klein*, 647 F.3d 1343 (Fed. Cir. 2011).

Based on my professional judgment, I believe that this appeal requires an answer to one or more precedent-setting questions of exceptional importance:

1. Whether an "implicit" acknowledgment of a "potential" problem or "concern," which Judge Moore, in the dissent, notes "according to all of the evidence on record, never actually existed," is consistent with the Supreme Court's and this Court's anti-hindsight jurisprudence requiring substantial evidence of a "known problem" to provide a reason for combining references in the manner claimed.

2.    Whether this Court may adopt its own reason for combining references, which is different than the one relied upon by the Board, when evaluating the sufficiency of evidence supporting an obviousness determination.

3.    Whether an "implicit" finding of a "potential" leakage problem rises above a mere scintilla of evidence to show a "known" problem with leakage when direct and undisputed evidence shows there was no known problem with leakage.


*/s/ Frederick C. Laney*
Frederick C. Laney
NIRO, HALLER & NIRO
*Attorney of Record for Appellant,*
*Scientific Plastic Products, Inc.*

## I.    THE PANEL MISAPPREHENDED THE BOARD'S RULING AND OVERLOOKED KEY EVIDENCE

This Court's majority opinion dated September 10, 2014 made two legal errors and overlooked three important points of fact.  First, the majority legally erred by adopting a new generic reasoning for combining the prior art references ("***concern with leakage*** in LPLC cartridges") and replacing the reasoning articulated by the Board ("***known problem of leakage in threaded connections*** of plastic LPLC cartridges") to evaluate the sufficiency of the evidence in the record. The Supreme Court has held that a reviewing court is prohibited from affirming an administrative action by substituting what it considers to be a more adequate basis. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Second, the majority erroneously relied upon evidence of a "potential" problem or "concern" as a reason for combining the elements of the prior art in the manner claimed, which is directly contrary to the Supreme Court's and this Court's anti-hindsight jurisprudence requiring evidence of a known problem. *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398 (2006); *In re Sponnoble*, 405 F.2d 578 (C.C.P.A. 1969); *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372 (Fed. Cir. 2012); *Leo Pharm. Prods. v. Rea*, 726 F.3d 1346 (Fed. Cir. 2013).  Allowed to stand, a "potential" problem or "concern" standard introduced into this Court's jurisprudence for the first time in the majority opinion will effectively vitiate the safeguards created to guard against hindsight.  Indeed, according to the dissent, that is precisely what

3

went wrong in the majority opinion: "Hindsight, hindsight, hindsight." Dissent Slip Op., at 4.

Finally, the majority overlooked three important points of fact: (1) Biotage's expert testimony that he was "not aware of any leakage problems" with LPLC cartridges with threaded connections; (2) Yamada's disclosure of a liquid tight LPLC cartridge *without* an O-ring (e.g., Figure 6), which shows those of skill did not view an O-ring as necessary to avoid leakage; and (3) the decade gap between the filing of the claimed invention and the prior art without any known leakage problems. When objectively viewing the evidence that both justifies *and detracts* from the Board's decision, the Board's articulated reason motivating Yamada to be modified fails the substantial evidence test because there was no evidence.

## II.    ARGUMENT FOR REHEARING/REHEARING *EN BANC*

### A.    The Panel's Substitution Of Its Own Reasoning On Appeal For Combining References Was An Error Of Law

Without any analysis, the majority concluded that:

> [T]he issue here is not whether the Yamada cartridge leaked, but whether there was a concern with leakage in LPLC cartridges such that a person of ordinary skill would have provided a known pressure-resistant cap, as in King and Strassheimer, to the cartridge of Yamada. Substantial evidence supports the Board's finding that there was such a concern.

Panel Slip Op., at 11. The Board, however, found that "a reason for one of ordinary skill in the art to have turned to [the secondary references] to improve the sealing arrangement set forth in Yamada" was the alleged "known problem of

leakage in threaded connections of plastic LPLC cartridges under pressure

identified in the [patents-at-issue]."  Panel Slip Op., at 10.

A "***known problem of leakage in threaded connections of plastic LPLC***

***cartridges … to improve the sealing arrangement set forth in Yamada***" is a very

different and more limited reason than the broader, generic "***concern with leakage***

***in LPLC cartridges***" adopted by the majority to evaluate the sufficiency of

evidence.  "Concerns" with leakage in LPLC cartridges is not simply an

explanation of the Board's reasoning.  The grounds for the Board's decision

required evidence that ordinarily skilled persons would have been motivated to

"improve the sealing arrangement set forth in Yamada" because they knew

problems existed with "leakage in threaded connections of plastic LPLC

cartridges."  The new reasoning announced by the majority simply required

evidence of a general "concern with leakage in LPLC cartridges."  Of course, the

bar for evidence showing a general ***concern*** with leakage in LPLC cartridges is

much lower than what is required to show a specific "***known problem***" with

leakage particular to the threaded connections of LPLC cartridges such that it

would prompt someone to improve the seal of Yamada.

The existence of a reason for a person of ordinary skill to combine

references is a question of fact. *Cheese Sys., Inc. v. Tetra Pak Cheese & Power*

*Sys., Inc.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013).  "The articulated reasoning and

factual underpinnings of an examiner's rejection are, thus, essential elements of any stated [obviousness] ground of rejection to which applicants are entitled to notice and a fair opportunity to respond." *In re Biedermann*, 733 F.3d 329, 336 (Fed. Cir. 2013).

Because the reason for combining references is a factual determination, this Court has recognized that it is improper to redefine the problem on appeal. *In re Klein*, 647 F.3d 1343, 1351-52 n.1 (Fed. Cir. 2011) ("We agree with Mr. Klein that, to the extent the government attempts to do so, it cannot redefine the problem Mr. Klein was addressing …"). Moreover, the Supreme Court has held that courts are barred from "substituting what it considers to be a more adequate or proper basis" to affirm an administrative action. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("If the grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."). Therefore, it was legal error for the majority to substitute its "concerns with leakage in LPLC cartridges" reasoning for the Board's "known problem of leakage in threaded connections of plastic LPLC cartridges" to improve the seal of Yamada.

The importance of the above rule is evident in this case. The majority criticizes SPP as misunderstanding the issue – "the issue here is not whether the Yamada cartridge leaked …." Panel Slip Op., at 11. But, the Board, not SPP, is the

one who focused on ***improving the sealing arrangement in Yamada***.  Yamada was the ***one and only*** prior art reference relied upon to evidence what the skilled artisan knew about LPLC cartridges with threaded connections.  Because the Board identified an alleged "known problem of leakage in threaded connections of plastic LPLC cartridges" as the "reason" a person of skill would seek out soda pop seals to improve Yamada, SPP properly focused its argument on the sufficiency of the evidence supporting that conclusion.

Because the Yamada LPLC cartridges were also the only prior art LPLC cartridges with threaded connection identified in the record, SPP focused its challenge on the affirmative direct evidence showing the ordinarily skilled person never recognized any leakage problems with the Yamada cartridges.  As the dissent declared, "[t]here is absolutely no evidence even suggesting that one skilled in the art was aware of a leakage problem in Yamada's design …." Dissent Slip Op., at 3.  Hence, no evidence, much less substantial evidence, exists to support the Board's erroneous ruling that there was a "known problem with leakage in threaded connections of plastic LPLC cartridges." SPP properly focused its challenge, therefore, on the actual reason articulated by the Board and the lack of evidence supporting that conclusion.

Had the majority properly focused on the properly framed question of whether the record supported the Board's finding of "***a known problem with***

*leakage in threaded connections of plastic LPLC cartridges under pressure … to improve the sealing arrangement set forth in Yamada,*" the only conclusion is that the record in this case failed to provide substantial evidence supporting that conclusion.

### B.    A "Potential" Problem Is Not A "Known" Problem

For the first time, the Court in this case has held evidence "implicitly" showing a "potential" problem to be sufficient in an obviousness analysis. That is not the law – *KSR* requires a "known" problem. Further, every previous decision of this Court has required evidence in the prior art to establish a "known" problem. The difference is significant. Something that is "known" has been established to exist. Something that is a "potential" problem has not been established to exist, only that it possibly might exist. Never before has any court held that a person of ordinary skill would have been prompted to make a combination based on a supposed "potential" problem. Courts have always required evidence from the prior art showing a problem that was known, which by its nature would have prompted a combination of known elements in the manner claimed.

In any obviousness determination, "[a] fact finder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning." *KSR,* 550 U.S. at 421. It is "important to identify a reason that would have prompted a person of ordinary skill in the

relevant field to combine the elements in the way the claimed new invention does." *Id.* at 418. To guard against hindsight, therefore, this Court has held that there must be evidence of a reason that would have caused a person of skill in the art to change the prior art and reconstruct the claimed combination. *Rolls-Royce, PLC v. United Techs. Corp.*, 603 F.3d 1325, 1338 (Fed. Cir. 2010) ("To preclude hindsight in this analysis, this court flexibly seeks evidence from before the time of the invention in the form of some teaching, suggestion, or even mere motivation … to make the variation or combination.").

*KSR* holds that an obvious analysis requires evidence from the prior art of known problem: "[u]nder a correct analysis, any need or ***problem known*** in the field of endeavor at the time of invention … can provide a reason for combining the element in the manner claimed." *KSR,* 550 U.S. at 420 (emphasis added). It similarly said "[o]ne of the ways in which a patent's subject matter can be proved obvious is by noting that there ***existed at the time of the invention a known problem*** for which there was an obvious solution encompassed by the patent's claims." *KSR,* 550 U.S. at 419-20 (emphasis added). In *Eisai Co. v. Dr. Reddy's Labs.*, 533 F.3d 1353, 1359 (Fed. Cir. 2008), this Court recognized "*KSR* assumes a starting reference point or points of art, prior to the time of invention, from which a skilled artisan might identify a problem and pursue potential solutions."

9

Likewise, this Court has always required evidence of a "known" problem versus a "potential" problem. *Leo* held that no reason could exist to modify the prior art to address stability when the prior art failed to disclose or recognize the stability problem. 726 F.3d 1346, 1354 (Fed. Cir. 2013) ("[B]ecause neither Dikstein nor Serup recognized or disclosed the stability problem, the record shows no reason for one of ordinary skill in the art to attempt to improve upon either Dikstein or Serup using Turi."). Similarly, in *Mintz* this Court held that there must be evidence from before the invention that a person of skill in the field of art would have recognized the problem. 679 F.3d at 1377-78 ("PCM must prove … that a person of ordinary skill in the meat encasement arts at the time of the invention would have recognized the adherence problem …."). This Court has also observed that "[w]ithout … a reason to seek [a solution] in a new way, a researcher or artisan of ordinary skill would not [change the prior art]." *Rolls-Royce*, 603 F.3d at 1338. Therefore, prior to the majority's decision in this case, this Court has consistently required evidence of a known problem to establish a reason that a person of ordinary skill would have been prompted to modify or combine prior art references.

Never before has this Court held that a "concern," supported by only an alleged "implicit" acknowledgement of a "potential" problem, is a sufficient basis to find an ordinarily skilled person would have been prompted to change prior art.

Nor can SPP find a case that even suggests the hypothetical person of ordinary skill would be motivated to solve "potential" problems or "concerns."  Common sense suggests the ordinary person, who is presumed to follow conventional wisdom, would fix a known problem with a known solution. *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985)( A "person of skill in the art is … presumed to be one who thinks along the line of conventional wisdom in the art and is not one who undertakes to innovate ….").

Common sense also suggests the same person wouldn't deviate from a known solution for a "potential" problem or "concern" unless there is a good reason.  "That person would not have ignored how devices disclosed in the prior patents worked …." *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1580 (Fed. Cir. 1987).  Where those of skill believe a solution exists and there are no other reasons to not use the known solution, the ordinary person of skill would believe the problem is solved and would not undertake to innovate a different solution.  "You wouldn't seek to 'improve [a] sealing arrangement' that doesn't leak." Dissent Slip Op., at 3.  The conventional wisdom is: "if it ain't broke, don't fix it".

The dissent recognizes this point.  "The Board's conclusion that Yamada's O-ring 'implicitly' acknowledges a 'potential' leakage problem such that one of skill in the art would have been motivated to modify Yamada is pure conjecture."

11

Dissent Slip Op., at 3. "[This Court] cannot rely on the Board's speculation about a 'potential' problem that, according to all of the evidence on record, never actually existed, to support a finding of obviousness." Dissent Slip Op., at 3. "One of skill in the art would not have modified Yamada to fix a leakage problem that never existed in the first place." *Id.* Given that there were no leakage problems with Yamada, it is not surprising that nobody sought to improve or modify Yamada during the interval of over a decade before SPP's invention. Indeed, SPP's direct competitor Biotage released the accused products over two years after the SPP launch, and after Biotage personnel had inspected the SPP cartridge. (A621-23). In *Leo*, this Court noted the significance of a similar ten-year interval: "If these discoveries and advances were routine and relatively easy, the record would undoubtedly have shown that some ordinary artisan would have achieved this invention within months of Dikstein or Serup. Instead this invention does not appear for more than a decade." 726 F.3d at 1354.

"At its core, our anti-hindsight jurisprudence is a test that rests on the unremarkable premise that legal determinations of obviousness, as with such determinations generally, should be based on evidence rather than on mere speculation or conjecture." *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, 1290 (Fed. Cir. 2006). It is no less important in an obviousness analysis to avoid speculation or conjecture when identifying the problem providing a motivation to

modify the prior art, than it is in any other part of the analysis. According to the dissent, that is precisely what occurred in the majority and Board opinion: "Hindsight, hindsight, hindsight." Dissent Slip Op., at 4.

### C. The Panel Opinion Overlooked That Biotage's Expert Admission Of Not Being Aware Of Leakage Problems Was Not Limited To Yamada

The majority overlooked three critical facts. First, there is the testimony of Biotage's expert, Dr. Pearson, stating that he was not aware of leakage problems with threaded LPLC cartridges. Dr. Pearson testified he had over thirty years of experience working with flash chromatography equipment and consulted with research chemists throughout his years of experience. (A710-11, ¶3). Dr. Pearson said that he was "***not aware of leakage problems*** with the Büchi [LPLC] columns, ***which involve removable threaded caps that allow user packing and direct sample introduction***." (A713, ¶9). Dr. Pearson, in fact, offered no testimony of having ever been aware of ***any*** leakage problems with ***any*** LPLC cartridges.

Second, the majority overlooked that Yamada discloses LPLC cartridges without an O-ring that were also liquid tight. Yamada in fact discloses an LPLC cartridge with threaded connections, in which "no O-ring is provided" and is "liquid tight." (A97 Figure 6; A112 at col.9:48-64). Thus, in addition to Yamada cartridges with an O-ring, there were other threaded LPLC cartridges ***without*** an

13

O-ring in which there were no recognized leakage problems.  In each and every

case, the evidence establishes they had no leakage problem.

Finally, *Graham* cites approvingly Judge Learned Hand's *Reiner v. I. Leon

Co.*, 285 F.2d 501 (2nd Cir. 1960), decision regarding factors to consider regarding

motivational issues. *Graham v. John Deere Co.*, 383 U.S. 1, 36 (1966).  *Reiner*

identifies "how long did the surrounding and accessory arts disclose the means" as

an important objective consideration when considering motivation. 285 F.3d at

504.  *Leo*, from this Court, recognized this objective factor: "Turi was publicly

available in the prior art twenty-two years before the '013 patent was filed, yet

there is no evidence that anyone sought to improve Turi with vitamin D." 726 F.3d

at 1355.  Similarly, *Panduit* states: "[i]ndeed, that the elements noted by the court

lay about in the prior art available for years to skilled workers, without, as the court

found, suggesting anything like the claimed inventions, is itself evidence of

nonobviousness." 810 F.2d at 1577.  The dissent also recognized this factor.

Dissent Slip Op., at 2-3.  ("The time delay between the Yamada configuration and

the inventions at issue also supports the fact that one of skill in the art would not

have modified Yamada because it did not have a leakage problem.").  The

majority, however, overlooked this important objective factor in this case.

"In reviewing the record for substantial evidence, [the Court] must take into

account evidence that both justifies and detracts from the factual determinations."

*In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000).  The record as a whole, therefore, must be reviewed for substantial evidence that a known problem ***with leakage in threaded connections of plastic LPLC cartridges*** under pressure existed to prompt the skilled artisan ***to improve the sealing arrangement set forth in Yamada***.

The overwhelming weight of the evidence is to the contrary: (1) the prior art was publicly available over a decade before the claimed invention without any known leakage problems; (2) the prior art indisputably did not suffer leakage problems; and (3) Biotage's expert testified he was not aware of any leakage problems using threaded connection with LPLC cartridges.  Accounting for the above facts, the Board's speculation about an alleged "implicit" acknowledgement of a "potential" leakage problem is, if anything, a mere scintilla of evidence and fails to satisfy the substantial evidence burden it must meet to be affirmed.

## III.    CONCLUSION

SPP respectfully submits that its petition for rehearing or rehearing *en banc* should be granted to resolve the important precedent-setting questions set forth above.

Date:  October 10, 2014                       Respectfully submitted,

                                              */s/ Frederick C. Laney*
                                              Frederick C. Laney
                                              NIRO, HALLER & NIRO
                                              181 West Madison Street, Suite 4600

Chicago, IL 60602
(312) 236-0733
laney@nshn.com
*Attorneys for Appellant,*
*Scientific Plastic Products, Inc.*

## PROOF OF SERVICE

I hereby certify that on October 10, 2014, I caused the foregoing **PETITION FOR REHEARING & REHEARING *EN BANC* OF APPELLANT SCIENTIFIC PLASTICS PRODUCTS, INC.,** to be electronically filed through the CM/ECF system, which will send a notice of electronic filing to counsel for all parties to the action who are registered in the CM/ECF system. Copies of the above-mentioned documents have also been served as follows:

**VIA E-MAIL:**

George C. Beck, Esq.
Foley & Lardner LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007
(202) 672-5300
gbeck@foley.com

Debra D. Nye
Foley & Lardner LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 847-6700
dnye@foley.com

Michael R. Houston
Foley & Lardner, LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654
(312) 832-4500
mhouston@foley.com

Upon this Court's acceptance of the above filing, copies will be served via U.S. Mail to:

OFFICE OF THE SOLICITOR
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

OFFICE OF GENERAL COUNSEL
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450


Dated:  October 10, 2014          */s/ Frederick C. Laney*
                                  Frederick C. Laney
                                  Paul K. Vickrey
                                  NIRO, HALLER & NIRO
                                  181 West Madison Street, Suite 4600
                                  Chicago, IL 60602
                                  (312) 236-0733
                                  laney@nshn.com
                                  vickrey@nshn.com

                                  David M. Quinlan
                                  DAVID M. QUINLAN, P.C.
                                  32 Nassau Street, Suite 300
                                  Princeton, NJ 08542
                                  (609) 921-8660
                                  david@quinlanpc.com

                                  *Attorneys for Appellant,*
                                  *Scientific Plastic Products, Inc.*

# ADDENDUM
# TO PETITION FOR REHEARING &
# REHEARING *EN BANC*
# OF APPELLANT SCIENTIFIC
# PLASTIC PRODUCTS, INC.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOTICE OF ENTRY OF
## JUDGMENT ACCOMPANIED BY OPINION

### OPINION FILED AND JUDGMENT ENTERED: 09/10/2014

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

Costs are taxed against the appellant in favor of the appellee under Rule 39. The parties are encouraged to stipulate to the costs. A bill of costs will be presumed correct in the absence of a timely filed objection.  Costs are payable to the party awarded costs. If costs are awarded to the government, they should be paid to the Treasurer of the United States. Where costs are awarded against the government, payment should be made to the person(s) designated under the governing statutes, the court's orders, and the parties' written settlement agreements. In cases between private parties, payment should be made to counsel for the party awarded costs or, if the party is not represented by counsel, to the party pro se. Payment of costs should not be sent to the court. Costs should be paid promptly.

If the court also imposed monetary sanctions, they are payable to the opposing party unless the court's opinion provides otherwise. Sanctions should be paid in the same way as costs.

Regarding exhibits and visual aids: Your attention is directed Fed. R. App. P. 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

FOR THE COURT

/s/ Daniel E. O'Toole
Daniel E. O'Toole
Clerk of Court

13-1219, -1220, -1221 - Scientific Plastic Products v. Biotage AB
United States Patent and Trademark Office, Case No. 95/000,495, -496, -497

# United States Court of Appeals for the Federal Circuit

_____

**SCIENTIFIC PLASTIC PRODUCTS, INC.,**
*Appellant,*

**v.**

**BIOTAGE AB,**
*Appellee.*

_____

2013-1219, -1220, -1221

_____

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Reexamination Nos. 95/000,495, 95/000,496, and 95/000,497.

_____

Decided: September 10, 2014

_____

FREDERICK C. LANEY, Niro, Haller & Niro, of Chicago, Illinois, argued for appellant. With him on the brief was PAUL K. VICKREY. Of counsel on the brief was DAVID M. QUINLAN, David M. Quinlan, P.C., of Princeton, New Jersey.

GEORGE C. BECK, Foley & Lardner, LLP, of Washington, DC, argued for appellee. With him on the brief were MICHAEL R. HOUSTON, of Chicago, Illinois, and DEBRA D. NYE, of San Diego, California.

_____

Before NEWMAN, MOORE, and WALLACH, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* NEWMAN.
Dissenting opinion filed by *Circuit Judge* MOORE.

NEWMAN, *Circuit Judge.*

Scientific Plastics Products, Inc. (SPP) is the owner of the three United States Patents here at issue: No. 7,138,061 (the '061 patent), No. 7,381,327 (the '327 patent), and No. 7,410,571 (the '571 patent), which relate to a resealable cartridge for low pressure liquid chromatography (LPLC). The '061 patent claims a method of performing LPLC using the cartridge, the '571 patent claims the cartridge, and the '327 patent claims a modified cartridge. After SPP filed suit against Biotage AG for patent infringement, Biotage requested *inter partes* reexamination of the three patents. The district court then stayed the infringement litigation.

The patent examiner rejected all claims of the three patents on the ground of obviousness, and the Patent Trial and Appeal Board affirmed the rejections and cancelled all claims.[1] We affirm the Board's decisions.

## BACKGROUND

The SPP patents discuss the need for a low cost resealable cartridge for LPLC that provides a fluid tight seal under pressure. The claimed cartridge, illustrated at Figure 1 of the '327 patent, comprises a tubular container

---

[1]     *Biotage AB v. Scientific Plastic Prods., Inc.*, No. 2012-007321, 2012 WL 6043584 (P.T.A.B. Nov. 30, 2012) ('327 patent); No. 2012-007322, 2012 WL 6043585 (P.T.A.B. Nov. 30, 2012) ('061 patent); No. 2012-012468, 2012 WL 6043586 ('571 patent) (P.T.A.B. Nov. 30, 2012). The opinion for each appeal is effectively identical; Board Op. citations herein are to the '061 patent decision.

20 having a threaded polymer cap 28 and a sealing flange 40.



Figure 1

Claim 1 of the '327 patent is the broadest cartridge claim:

1.   A low pressure liquid chromatographic cartridge having a longitudinal axis, comprising:
a tubular polymer container adapted to receive a chromatographic packing material, the container having an outlet port located at a downstream end of the container and configured for connecting to chromatographic equipment during use of the cartridge, the container having container threads formed on an upstream end of the container and a lip defining an opening to the

4                   SCIENTIFIC PLASTIC PRODUCTS v. BIOTAGE AB

container with an inward facing inclined sealing
surface adjacent the lip and facing the longitudi-
nal axis;

a polymer cap having an inlet port located on
an upstream end of the container, the port being
configured for connecting to chromatographic
equipment during use of the cartridge, the cap
having cap threads located on a skirt of the cap to
threadingly engage the container threads;

an annular sealing flange depending from the
cap and located radially closer to the longitudinal
axis than the skirt, the flange having an outward
facing inclined sealing surface facing away from
the axis with an upstream end of the flange being
further from the axis than a downstream distal
end of the flange; the outward facing inclined sur-
face on the flange generally aligned with and lo-
cated to abut the inward facing inclined surface
on the container to form a resilient fluid tight seal
between the cap and container suitable for use in
low pressure liquid chromatography when the cap
is screwed onto the container.

The primary issue on reexamination concerned the
obviousness of combining the LPLC cartridge shown in
the Yamada reference with the King or Strassheimer
pressure-resistant caps. These references are:

*U.S. Patent No. 5,693,223 (Yamada):*

Yamada shows an LPLC cartridge having a tubular
polymer container with an open upstream end and an
outflow at the downstream end. Yamada shows a thread-
ed polymer cap for the cartridge that is "detachably" fitted
to the corresponding threaded upstream end of the car-
tridge body. Yamada further shows an O-ring in the cap
to ensure liquid tightness. The examiner found that
Yamada discloses all of the features of the SPP cartridge

except for the complementary inclined sealing surfaces of the cap and the lip of the container.

*PCT publication WO 2002/42171A1 (King)*:

King relates to "improved seals for container closure assemblies," and is "especially applicable to the sealing of containers in substantially gas-tight and liquid-tight fashion, such as the sealing of . . . beverage containers." King shows a "container closure assembly" with a threaded polymer cap that ensures a fluid tight seal. The examiner found that King shows sealing surfaces that have oppositely inclined surfaces with respect to the cap and lip of the container, as in the SPP closure.

*U.S. Patent No. 5,100,013 (Strassheimer)*:

Strassheimer relates to plastic bottles and closures therefor that are "especially useful for carbonated beverages." Strassheimer shows a plastic threaded cap that ensures a fluid tight seal "even after repeated use." The examiner found that Strassheimer shows a taper on the lip of the plastic container that corresponds to a taper on the cap, as in the SPP closure.

The examiner concluded that it would have been obvious to combine the cartridge of Yamada with the cap of either King or Strassheimer. On appeal to the Board, SPP challenged (1) the examiner's determination that King and Strassheimer were "analogous art" and (2) that it would have been obvious to combine the LPLC cartridge of Yamada with the pressure-resistant resealable cap of either King or Strassheimer.

To be deemed "analogous art," a reference outside an inventor's field of endeavor must be "reasonably pertinent" to the particular problem with which the inventor is involved, such that a person of ordinary skill would reasonably have sought a solution to the problem in that outside field. The Board stated that "[h]ere, Patent Owner identifies one of the purposes of the '061 Patent as

6                          SCIENTIFIC PLASTIC PRODUCTS v. BIOTAGE AB

forming an LPLC cartridge that 'would allow a user to
easily vary and access the cartridge's contents without
destroying its ability to be sealed and function under the
LPLC pressures.'" Board Op. at *6 (quoting Appellant Br.
11). The Board found that King and Strassheimer were
relevant to SPP's identified purpose, and therefore were
analogous art:

> Therefore, it was reasonable for the Examiner to
> find that one of ordinary skill in the art would
> have found the disclosures of King and Strass-
> heimer relevant in constructing a plastic contain-
> er that achieves a fluid tight seal at elevated
> pressure, while preserving access to the container
> in order to easily vary its contents.

Board Op. at *7.

The Board also addressed SPP's argument that the
examiner failed to provide adequate reasoning for combin-
ing Yamada with King or Strassheimer. The Board found
that the specification of the SPP patents identified a
leakage problem associated with threaded connections
between the polymer cap and polymer body in LPLC
cartridges, and that Yamada's use of an O-ring in the
cartridge "implicitly acknowledges" potential leakage. *Id.*
The Board concluded that this known problem "provides a
reason for one of ordinary skill to have turned to King or
Strassheimer to improve the sealing arrangement set
forth in Yamada." *Id.*

## DISCUSSION

Criteria for determining whether prior art is analo-
gous may be summarized as "(1) whether the art is from
the same field of endeavor, regardless of the problem
addressed, and (2) if the reference is not within the field
of the inventor's endeavor, whether the reference still is
reasonably pertinent to the particular problem with which
the inventor is involved." *In re Clay*, 966 F.2d 656, 658–

SCIENTIFIC PLASTIC PRODUCTS v. BIOTAGE AB                 7

59 (Fed. Cir. 1992). The question here is whether King or Strassheimer meets the second criterion. Precedent provides guidance as to when a reference is reasonably pertinent to the problem:

> "A reference is reasonably pertinent if . . . it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem. If a reference disclosure has the same purpose as the claimed invention, the reference relates to the same problem, and that fact supports use of that reference in an obviousness rejection."

*Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1321 (Fed. Cir. 2011) (quoting *Clay*, 966 F.2d at 659); *see also In re Klein*, 647 F.3d 1343, 1348 (Fed. Cir. 2011) (same standard). The pertinence of the reference as a source of solution to the inventor's problem must be recognizable with the foresight of a person of ordinary skill, not with the hindsight of the inventor's successful achievement. *See In re Oetiker*, 977 F.2d 1443, 1447 (Fed. Cir. 1992) ("Patent examination is necessarily conducted by hindsight, with complete knowledge of the applicant's invention . . . ."); *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2006) ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning.").

The Board found that the central purpose of the SPP inventors was to form "an LPLC cartridge that 'would allow a user to easily vary and access the cartridge's contents without destroying its ability to be sealed and function under LPLC pressures.'" Board Op. at *6 (quoting Appellant Br. 11). The Board concluded that a person of ordinary skill seeking such a cartridge would reasonably look to sealing arrangements for other pressurized systems. Thus the Board held that replacement of the

8                           SCIENTIFIC PLASTIC PRODUCTS v. BIOTAGE AB

sealing arrangement of Yamada with the sealing ar-
rangement of King or Strassheimer was an obvious solu-
tion to the problem of providing a resealable cartridge
that achieves a fluid tight seal at elevated pressures.

SPP disagrees with the Board's characterization, and
states that the purpose of its invention is to "provide
chemists with a low cost disposable chromatography
cartridge that can function under LPLC pressures and
simplify the chemist's ability to control the chromato-
graphic packing material and the introduction of fluids
into the cartridge under pressure." Appellant Br. 25–26.
SPP argues that the needs identified in the specification
are specific to flash chromatography, and that chemists in
laboratories would not look to "soda-pop" bottle caps to
solve problems with flash chromatography cartridges.
However, the analogous art inquiry does not exclude
references "not within the field of the inventor's endeav-
or," if a person of ordinary skill would reasonably look to
that reference in order to solve the problem confronting
the inventor. *In re Clay*, 966 F.2d at 659.

SPP states that the purposes of the invention and the
prior art must be considered as a whole, in contrast to
focusing on specific components. SPP argues that "[b]y
focusing just on sealing issues, the Board improperly
narrowed its focus to commonality for particular features
instead of answering the central question of whether the
reference's field itself is even one a skilled artisan would
have reasonably looked to, which requires a focus on the
claimed invention." Appellant Br. 33.

The Board observed that when the problem an inven-
tion is designed to solve is not unique to the specific field
of the invention, it is not improper for the trier of fact to
consider whether a person of ordinary skill would consult
a different art in order to solve the problem. *See In re
Paulsen*, 30 F.3d 1475, 1481–82 (Fed. Cir. 1994) (affirm-
ing rejection of a laptop computer hinge as obvious over

SCIENTIFIC PLASTIC PRODUCTS v. BIOTAGE AB                9

hinged cabinets, piano lids, etc., because the "problem is not unique to portable computers"); *Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 314 (Fed. Cir. 1985) (affirming invalidation of a patent for a hinged pen arm because a person skilled in pen art would have looked to hinge and fastener art for a way to attach a pen to a pen arm).

Other cases have found that a particular reference was not analogous art when the field was not an obvious area to be consulted. In *In re Oetiker*, the court held that a person of ordinary skill, seeking to solve the problem of fastening a hose clamp, would not reasonably be expected to look to the field of fasteners for women's garments. *See* 977 F.2d at 1446–47 ("The Board apparently reasoned that all hooking problems are analogous."). The analogous art inquiry is a factual one, requiring inquiry into the similarities of the problems and the closeness of the subject matter as viewed by a person of ordinary skill.

Here, the King and Strassheimer references address the problem of providing a fluid tight seal at elevated pressures, between a container and a resealable cap. This is sufficiently close to the problem addressed by the claimed invention; substantial evidence supports the Board's finding that King and Strassheimer are available as prior art.

The question remains as to whether combining the cartridge of Yamada with the pressure-resistant cap of King or Strassheimer would have been obvious to a person of ordinary skill in the field of liquid chromatography devices. In *KSR*, the Court explained:

[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art. Although common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, it

can be important to identify a reason that would
have prompted a person of ordinary skill in the
relevant field to combine the elements in the way
the claimed new invention does.

550 U.S. at 418.

Applying these principles, the Board concluded that
the "known problem of leakage in threaded connections of
plastic LPLC cartridges under pressure identified in the
[patents] provides a reason for one of ordinary skill in the
art to have turned to King or Strassheimer to improve the
sealing arrangement set forth in Yamada." Board Op. at
*8. The Board cited a statement in the SPP patents that
explained that because prior art LPLC cartridges "leak at
the seams[,] [t]hreaded connections are thus not used to
form the body of [LPLC cartridges] when the body is made
out of polymers." *Id.* at *6. The Board noted SPP's argu-
ment that Yamada, a polymer cartridge with threaded
connections, does not explicitly disclose a leakage prob-
lem. However, the Board found that "by providing for the
presence of an O-ring, Yamada implicitly acknowledges
that there is a potential leakage issue between the cap
and column body of the plastic cartridge." *Id.* at *7.

SPP argues that the Board improperly relied on the
inventors' description of the problem solved in order to
find the solution obvious, an analytic procedure that relies
on hindsight by using the inventors' own reasoning
against them. SPP points out that the statement in the
patents that threaded connections are not used with
plastic LPLC cartridges was actually incorrect, as evi-
denced by the Yamada reference, which shows a plastic
LPLC cartridge with threaded connections. SPP argues
that a person of ordinary skill would not have perceived
any need to improve such cartridges, and that only
through improper hindsight was the Board able to justify
its finding of a known leakage problem.

SPP is correct that obviousness is not determined by hindsight. However, the issue here is not whether the Yamada cartridge leaked, but whether there was a concern with leakage in LPLC cartridges such that a person of ordinary skill would have provided a known pressure-resistant cap, as in King or Strassheimer, to the cartridge of Yamada. Substantial evidence supports the Board's finding that there was such a concern.

We conclude that the Board did not err in holding that it would have been obvious for a person of ordinary skill in the field of the invention to modify the chromatography cartridge of Yamada with the resealable threaded cap of King or Strassheimer. This applies to the three patents whose reexamination decisions are here appealed. The Board's decisions are

**AFFIRMED**.

# United States Court of Appeals
# for the Federal Circuit

_____

**SCIENTIFIC PLASTIC PRODUCTS, INC.,**
*Appellant,*

**v.**

**BIOTAGE AB,**
*Appellee.*

_____

2013-1219, -1220, -1221

_____

Appeals from the United States Patent and Trade-mark Office, Patent Trial and Appeal Board in Reexamination Nos. 95/000,495, 95/000,496, 95/000,497.

_____

MOORE, *Circuit Judge*, dissenting.

I would find for the patentee. This is a two-reference obviousness rejection (Yamada and King or Yamada and Strassheimer), which I would reverse. The Board failed to provide substantial evidence that it would have been obvious to modify Yamada and it failed to determine the level of ordinary skill in the art.

The claims at issue are directed to a flash chromatography cartridge to be used in low pressure liquid chromatography (LPLC). The primary reference, Yamada, is directed to a column device for use in LPLC. The Board determined that Yamada disclosed all the elements of the

2                    SCIENTIFIC PLASTIC PRODUCTS v. BIOTAGE AB

claims at issue except the inclined abutting surfaces of the cap and the lip of the container.  The Board concluded that one of skill in the art would have been motivated to modify the Yamada structure by using the sealing structure disclosed in King or Strassheimer, both of which are directed to container closures for soda pop bottles.  I dissent from the majority because this record does not contain substantial evidence that one of skill in the relevant art would have modified the chromatography cartridge in Yamada by replacing its sealing configuration with that of a soda pop bottle.

The Board concluded that "known problem of leakage in threaded connections of plastic LPLC cartridges . . . provides a reason for one of ordinary skill in the art to have turned to King or Strassheimer to improve the sealing arrangement [of] Yamada."  Board Op. at *8.  The majority cites two factual findings in support of this conclusion—that Yamada's use of an O-ring "implicitly acknowledges" a "potential leakage issue," and that the inventors' statements in the patents allegedly identify a prior art leakage problem.  Maj. Op. at 6; *see also* Board Op. at *7.  Neither factual finding is supported by substantial evidence.  These were contested *inter partes* reexaminations with experts on both sides, yet there is no testimony or other evidence of a known leakage problem in prior art cartridges that would have motivated one of skill in the art to modify Yamada.

The Board's finding regarding Yamada's O-ring, Board Op. at *7, ignores the reality of the situation, which is that Yamada did not have a leakage problem.  Yamada does not disclose leakage problems.  *Id.*  Even Biotage's expert admitted that Yamada's configuration did not have leakage problems at the pressures identified by the patents-at-issue.  J.A. 501 ¶ 9, 613 ¶ 9, 713 ¶ 9.  In fact, the Board found that Yamada's configuration "ensure[s] liquid tightness."  Board Op. at *5.  The time delay be-

tween the Yamada configuration and the inventions at issue also supports the fact that one of skill in the art would not have modified Yamada because it did not have a leakage problem. Yamada's earliest priority date is more than ten years before the earliest filing date of the patents-at-issue. There is absolutely no evidence even suggesting that one skilled in the art was aware of a leakage problem in Yamada's design during those ten years. The Board's conclusion that Yamada's O-ring "implicitly" acknowledges a "potential" leakage problem such that one of skill in the art would have been motivated to modify Yamada is pure conjecture. We cannot rely on the Board's speculation about a "potential" problem that, according to all of the evidence on record, never actually existed, to support a finding of obviousness. One of skill in the art would not have modified Yamada to fix a leakage problem that never existed in the first place. You wouldn't seek to "improve [a] sealing arrangement" that doesn't leak.

The patents at issue do say: "This operating pressure is sufficiently high that these cartridges, which have relatively large diameter bodies, leak at the seams. Threaded connections are thus not used to form the body when the body is made of polymer." '061 patent col. 1 ll. 16–19. As a preliminary matter, the statement, as the parties acknowledge, is inaccurate. Yamada, for example, uses threaded connections. This statement, in the patents, is not a recognition of a *known* prior art problem that would have motivated one of skill in the art to want to modify the Yamada design. It was a problem identified, not in the prior art, but by these inventors.

It is troubling that the majority and the Board rely on the inventors' disclosure of the problem *their inventions solve* as the primary basis for modifying the prior art. This is hindsight of the worst kind, "wherein that which only the invention taught is used against its teacher."

4                    SCIENTIFIC PLASTIC PRODUCTS v. BIOTAGE AB

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1553 (Fed. Cir. 1983).  The patents do not indicate that leakage was a problem identified in the prior art or a problem known to those of skill in the art.  Rather they indicate that the claimed design will avoid leakage. These inventors identified a design problem, articulated it, and solved it.  There is absolutely no evidence of the existence of a known leakage problem that would have motivated skilled artisans to modify Yamada.  The Board is taking the ingenuity of these inventors and, without any record basis, attributing that knowledge to all skilled artisans as the motivation to make the inventions at issue.  Hindsight, hindsight, hindsight.

These were *inter partes* reexamination proceedings between sophisticated parties.  Both parties put on expert testimony regarding obviousness.  Yet there is no evidence that the chromatography cartridges in Yamada had a leakage problem that skilled artisans would have been motivated to address.  There is simply no evidence that one of skill in the art would have modified the Yamada cartridge using the soda pop bottle sealing mechanisms of King or Strassheimer to prevent a leakage problem that the Yamada cartridge did not have.

I dissent for a second, independent reason.  The Board found the claims obvious without resolving the level of skill in the art.  Oral Argument at 24:59–25:31, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl= 2013-1219.mp3.  It is axiomatic that this is a "basic factual inquir[y]" required of any obviousness determination. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).  In most cases, there is no dispute over the level of the skilled artisan.  But in this case, the parties contested this factual issue throughout the proceedings, and inexplicably the Board never resolved it.  Oral Argument at 19:57–20:32, 23:21–23:56, 24:59–25:31.  The parties still dispute this issue on appeal.  *Compare* Appellant's Br. 21 ("A *chemist*

analyzing organic compounds would not look to soda-pop bottles to solve problems with flash chromatography cartridges.") (emphasis added), *with* Appellee's Br. 28–29 ("SPP[] mischaracterizes the relevant person of ordinary skill to whom knowledge of analogous art would be attributable . . . . [T]he relevant person of ordinary skill in the art . . . would include a designer . . . skilled in *mechanical engineering*.") (emphasis added).

The Board's failure to make this determination is especially pernicious where the analogous art question is far from clear. Soda pop bottles and methods for using chromatography cartridges are clearly not in the same field of endeavor. Instead, the dispute on appeal is whether the soda pop bottle references are both reasonably pertinent to the inventors' problem. Maj. Op. at 6–7; *see also In re Oetiker*, 977 F.2d 1443, 1447 (Fed. Cir. 1992). "Reasonably pertinent" means "which fields *a person of ordinary skill* would reasonably be expected to look for a solution to the problem facing the inventor." *Oetiker*, 977 F.2d at 1447 (emphasis added). An ordinarily skilled chemist would have likely looked to a different body of prior art than an ordinarily skilled mechanical engineer with industrial design experience. Even Biotage recognizes that the determination of the person of ordinary skill is inextricably linked to what art would have been analogous. Oral Argument at 25:31–25:43. We cannot answer the analogous art question without knowing who the person of ordinary skill is.

I would reverse because I conclude that the Board's cancellation of the claims at issue was based entirely on hindsight reconstruction—there is no record evidence that one of skill in the art would have been motivated to modify Yamada with soda pop bottle sealing closures. And the Board cannot transfer the inventors' identification of the motivation for their patented design to the skilled artisan when there is no record evidence that the

6                    SCIENTIFIC PLASTIC PRODUCTS v. BIOTAGE AB

skilled artisan possessed that knowledge. Finally, where the level of ordinary skill, as here, is hotly contested and would affect the scope of the analogous art, the Board must decide that factual issue. I respectfully *dissent*.

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

*Questions and Answers*

**Petitions for Panel Rehearing (Fed. Cir. R. 40)**
**and**
**Petitions for Hearing or Rehearing En Banc (Fed. Cir. R. 35)**

---

*Q. When is a petition for panel rehearing appropriate?*

A. Petitions for panel rehearing are rarely considered meritorious. Consequently, it is easiest to first answer when a petition for panel rehearing is not appropriate. A petition for panel rehearing should not be used to reargue issues already briefed and orally argued. If a party failed to persuade the court on an issue in the first instance, they do not get a second chance. This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36, as a disposition of this nature is used only when the appellant/petitioner has utterly failed to raise any issues in the appeal that require an opinion to be written in support of the court's judgment of affirmance.

Thus, as a usual prerequisite, the court must have filed an opinion in support of its judgment for a petition for panel rehearing to be appropriate. Counsel seeking panel rehearing must be able to identify in the court's opinion a material error of fact or law, the correction of which would require a different judgment on appeal.

*Q. When is a petition for rehearing en banc appropriate?*

A. En banc decisions are extraordinary occurrences. To properly answer the question, one must first understand the responsibility of a three-judge merits panel of the court. The panel is charged with deciding individual appeals according to the law of the circuit as established in the court's precedential opinions. While each merits panel is empowered to enter precedential opinions, the ultimate duty of the court en banc is to set forth the law of the Federal Circuit, which merits panels are obliged to follow.

Thus, as a usual prerequisite, a merits panel of the court must have entered a precedential opinion in support of its judgment for a petition for rehearing en banc to be appropriate. In addition, the party seeking rehearing en banc must show that either the merits panel has failed to follow decisions of the Supreme Court of the United States or Federal Circuit precedential opinions, or that the merits panel has followed circuit precedent, which the party seeks to have overruled by the court en banc.

*Q. How frequently are petitions for panel rehearing granted by merits panels or petitions for rehearing en banc granted by the court?*

A. The data regarding petitions for panel rehearing since 1982 shows that merits panels granted some relief in only three percent of the petitions filed. The relief granted usually involved only minor corrections of factual misstatements, rarely resulting in a change of outcome in the decision.

En banc petitions have been granted less frequently. Historically, the court has initiated en banc review in a few of the appeals decided en banc since 1982.

*Q. Is it necessary to have filed either of these petitions before filing a petition for certiorari in the U.S. Supreme Court?*

A. No. All that is needed is a final judgment of the Court of Appeals.

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### INFORMATION SHEET

### FILING A PETITION FOR A WRIT OF CERTIORARI

There is no automatic right of appeal to the Supreme Court of the United States from judgments of the Federal Circuit. You must file a petition for a writ of certiorari which the Supreme Court will grant only when there are compelling reasons. (See Rule 10 of the Rules of the Supreme Court of the United States, hereinafter called Rules.)

**Time.** The petition must be filed in the Supreme Court of the United States within 90 days of the entry of judgment in this Court or within 90 days of the denial of a timely petition for rehearing. The judgment is entered on the day the Federal Circuit issues a final decision in your case. [The time does not run from the issuance of the mandate, which has no effect on the right to petition.] (See Rule 13 of the Rules.)

**Fees.** Either the $300 docketing fee or a motion for leave to proceed in forma pauperis with an affidavit in support thereof must accompany the petition. (See Rules 38 and 39.)

**Authorized Filer.** The petition must be filed by a member of the bar of the Supreme Court of the United States or by the petitioner representing himself or herself.

**Format of a Petition.** The Rules are very specific about the order of the required information and should be consulted before you start drafting your petition. (See Rule 14.) Rules 33 and 34 should be consulted regarding type size and font, paper size, paper weight, margins, page limits, cover, etc.

**Number of Copies.** Forty copies of a petition must be filed unless the petitioner is proceeding in forma pauperis, in which case an original and ten copies of the petition for writ of certiorari and of the motion for leave to proceed in forma pauperis. (See Rule 12.)

**Where to File**. You must file your documents at the Supreme Court.

**Clerk**
**Supreme Court of the United States**
**1 First Street, NE**
**Washington, DC 20543**
**(202) 479-3000**

No documents are filed at the Federal Circuit and the Federal Circuit provides no information to the Supreme Court unless the Supreme Court asks for the information.

**Access to the Rules.** The current rules can be found in Title 28 of the United States Code Annotated and other legal publications available in many public libraries.

Revised December 16, 1999